UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ANNA M. JANSEN, )<br>)<br>    Plaintiff,    )<br>)<br>vs.    )<br>)   4:12-cv-97-WGH-TWP<br>CAROLYN W. COLVIN,    )<br>ACTING COMMISSIONER OF    )<br>SOCIAL SECURITY,    )<br>)<br>    Defendant.    ) | |

# ENTRY ON JUDICIAL REVIEW

Anna M. Jansen seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "SSA"), which found her not disabled and not entitled to disability insurance benefits or Supplemental Security Income (collectively, "benefits") under the Social Security Act.  42 U.S.C. § 301 *et seq*.  For the reasons stated below, the Commissioner's decision must be **AFFIRMED**.

## I.   Background

### A.   Procedural History[1]

Jansen, 41 years old and with an eighth grade or "limited" education (R. at 15), applied for benefits on August 4, 2009, alleging a disability onset date of

---

[1] Jansen previously applied for and was denied benefits for an alleged disability period of April 15, 2008-July 9, 2009.  (R. at 89, 96-97).  Jansen's appeal covers only her August 4, 2009 applications.

July 8, 2009.  (R. at 172, 174.)  Her applications were denied initially and upon reconsideration.  (R. at 103-10, 113-18.)  On April 18, 2011, an Administrative Law Judge ("ALJ") held a hearing at which Jansen and a vocational expert ("VE") testified.  On June 10, 2011, the ALJ issued an opinion finding that Jansen was not disabled.  (R. at 17).  The Appeals Council denied Jansen's request for review (R. at 1-3), making the ALJ's decision the Commissioner's final decision.  20 C.F.R. §§ 404.955(a), 404.981.  As a final decision, jurisdiction is proper in this court.  42 U.S.C. § 405(g).

### B.    ALJ Findings

The ALJ's decision included the following findings:  (1) Jansen had not engaged in substantial gainful activity since the alleged disability onset date (R. at 11); (2) she had the following severe impairments:  borderline intellectual functioning, depression, posttraumatic stress disorder ("PTSD"), chronic obstructive pulmonary disease ("COPD"), and mild lumbar degenerative disc disease (R. at 11-13); (3) none of the severe impairments met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1 listings" or "Listings") (R. at 13); (4) Jansen has the residual functional capacity ("RFC") to perform light work with the following mental limitations[2]:  she was restricted to performing unskilled, simple, repetitive tasks requiring concentration for no more than two hours at a time; she was restricted to jobs requiring no more than occasional contact with co-workers and supervisors and no interaction with the general public; she was precluded

---

[2] The ALJ also assessed physical limitations (R. 13), none relevant to this appeal.

from any rapid production pace work; and she could only perform jobs which could be learned only by demonstration and do not require more than second grade reading skills (R. at 13-15); (5) she could not perform her past relevant work as a grinder machine operator (R. at 15); and (6) given Jansen's age, education, work experience, and RFC, there existed jobs in significant numbers in the national economy that she could perform. (R. at 16). Based on these findings, the ALJ concluded Jansen was not disabled.

## II. Legal Standards

In order to qualify for disability benefits, Jansen must establish that she suffered from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To establish disability, the claimant must present medical evidence of an impairment resulting "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 416.908; 404.1508.

The Social Security regulations outline a five-step inquiry the ALJ is to perform in order to determine whether a claimant is disabled. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to

preclude substantial gainful activity; (4) is unable to perform her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4).  The burden of proof is on Jansen for steps one through four; only after Jansen has met her evidentiary burden does the burden shift to the Commissioner at Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (internal quotation omitted); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

### III. Statement of Medical Evidence

The court finds that the Defendant's Memorandum in Support of the Commissioner's Decision ("Def's Memo") accurately summarizes the relevant medical evidence and incorporates that section into this opinion by reference. (Def's Memo 2-7).

### IV. Discussion

Jansen raises two issues on appeal, claiming:  (A) the record clearly supports a finding that she met or equaled Listing 12.05, Mental Retardation; and (B) the ALJ failed to properly accommodate for her limitations in concentration, persistence, and pace in the hypothetical posed to the VE.

### A. Whether Jansen met or equaled Listing 12.05

Jansen claims that the record evidence shows that her severe impairments met or equaled Listing 12.05, Mental Retardation. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1 Listing 12.05. To meet Listing 12.05, a claimant must satisfy this threshold requirement and show severity by meeting one of four sub-listings. Jansen argues that she meets the Listing 12.05 threshold and carries her burden either through sub-listing C or D.

### 1. Threshold Requirement and Listing 12.05(C)

A claimant may show the impairment's severity through evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 Listing 12.05(C). The ALJ found that while Jansen had been diagnosed several times with mild mental retardation and had IQ scores in the 60-70 range, she "[did] not have significant deficits in adaptive functioning consistent with mental retardation." (R. 12). The ALJ discussed the absence of IQ test results conducted when she was in school, and thus there was no way to determine whether her deficits in adaptive functioning had manifested before she was

5

22 years old. The ALJ further noted that she worked for eight years as a grinder machine operator, a semiskilled job with a Specific Vocational Preparation level of three and requiring between one and three months of preparation. (R. 54 (citing *Dictionary of Occupational Titles* No. 705.684-026, http://www.occupationalinfo.org/70/705684026.html)). The ALJ concluded that the work was "clearly inconsistent with mental retardation." (R. 12).

Jansen claims she meets the general requirements because of severe learning disabilities from an early age: she repeated first grade, was in special education classes beginning in fourth grade, and her grades were poor throughout her education, which was limited. (R. 12, 28-29, 280-82, 412). Her report from Centerstone Mental Heath Center ("Centerstone"), Jansen's treating mental health provider, confirmed that her mental disability had manifested before she was 22 years old. (R. 372). In 2008 and 2009, Jansen's verbal, performance, and full-scale IQ scores were all below 70. (R. 315-16, 415). Since mental retardation is a lifelong condition, her IQ scores from those tests are reflective of her IQ during her insured period. *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986). Therefore, Jansen claims, she met the first prong. For the second prong, the ALJ found at Step Two that she suffered from depression, PTSD, COPD, and mild lumbar disc degenerative disease. (R. 11). At that point, the ALJ necessarily found she had an additional impairment that imposed additional and significant work-related limitations. *Luckey v. Dep't of Health and Human Servs.*, 890 F.2d 666, 669 (4th Cir. 1989). Therefore, Jansen argues, the ALJ's partial reliance on Jansen's work history to

6

determine whether she met Listing 12.05 was improper. *Luckey*, 890 F.2d at 669; *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987).

Jansen's argument is unconvincing. As the Commissioner correctly notes, an ALJ is estopped from considering a claimant's age, education, and work experience only if the claimant is already receiving disability benefits. 20 C.F.R. § 404.1520(a)(4)(iii), (a)(5), (g)(1). SSA regulations, in fact, specifically permit the ALJ to evaluate work performed "during the period of time pertinent to the determination of disability." 20 C.F.R. Part 404, Subpart P, Appendix 1 Listing 12.00(D)(3). SSA forms ask applicants to list gainful employment for the fifteen years prior to the alleged disability onset date (*see* R. 192-93), so the logical reading of the regulation is that an ALJ may evaluate work Jansen performed from 1994 until 2009. The Seventh Circuit has held that past work history is highly relevant in determining whether low IQ prevented claimant from engaging in substantial gainful activity. *See Adkins v. Astrue*, 226 Fed. App. 600, 605 (7th Cir. 2007); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Therefore, the ALJ's consideration of Jansen's work as a grinder machine operator was appropriate.

Moreover, an ALJ is to consider daily activities in determining whether a claimant meets the Listing 12.05 introductory requirements. Jansen lived alone and took care of herself, although she needed help reading. (R. 12, 31, 40-41, 207-09, 414). This evidence served as a logical evidentiary bridge to the ALJ's conclusion that Jansen did not exhibit significant adaptive deficits. (R. 12). This failure to meet the Listing 12.05 threshold means that the court

7

must affirm the finding that Jansen did not meet or equal Listing 12.05(C), despite meeting both elements of the specific listing.

### 2. Listing 12.05(D)

Jansen further argues that she should have been found to meet Listing 12.05(D), and thus was disabled. To meet Listing 12.05(D), a claimant must have:

> A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

Jansen claims that because her mental disorder report showed marked difficulties in functioning and repeated, extended episodes of decompensation (R. 369-70), she should have been found to meet Listing 12.05(D).

Since Jansen did not meet the threshold requirements for Listing 12.05, she could not have met or equaled Listing 12.05(D). The ALJ therefore did not err in failing to evaluate her under that listing.

### B. The ALJ properly accommodated Jansen's limitations in the hypotheticals to the VE.

In determining Jansen's RFC, the ALJ found that she had moderate limitations in concentration, persistence, and pace. (R. 13-14). Consequently, the ALJ, in his hypotheticals to the VE, limited Jansen to unskilled, simple, repetitive tasks not requiring sustained concentration for more than two hours. The VE testified that while Jansen could not perform her past relevant work,

8

there were significant jobs in the national economy she could perform with those limitations. (R. 55-56). Jansen argues that since almost all hourly wage and repetitive jobs allow for breaks in two-hour increments, the two-hour limit on sustained concentration is really no limitation at all. (Plaintiff's Brief 13-14). Stripped of that limitation, the ALJ only accounted for Jansen's limitations by limiting her to simple, repetitive, unskilled work. The Seventh Circuit has ruled that this limitation is generally not a sufficient limitation to account for such moderate difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010). Jansen opines that given these deficiencies, the hypotheticals posed to the VE were incomplete and flawed, and they cannot be relied on as substantial by the ALJ at Step Five.

Jansen's argument is belied both by case law and the VE's testimony. Unlike in *O'Connor-Spinner*, the ALJ in this case explicitly listed Jansen's moderate deficits in concentration, persistence, and pace, and added the two hour concentration limit to account for those deficits. (R. 55). When the ALJ specifically accounts for a claimant's limitations beyond the broad concentration, persistence, and pace limitations, the Seventh Circuit has allowed the hypotheticals to stand. *O'Connor-Spinner*, 627 F.3d at 619-20 (citing *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007); *Johansen v. Barnhart*, 314 F.3d 283, 285, 288-89 (7th Cir. 2002); *Sims v. Barnhart*, 309 F.3d 424, 427, 431-32 (7th Cir. 2002)). Jansen does not explain why such limitations would be insufficient in her case; the hypothetical therefore was not flawed, and the VE's testimony could be relied on as substantial evidence.

9

*Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 540-41 (7th Cir. 1992). Moreover, the VE testified that the jobs she cited—amounting to over 800,000 positions nationally and 23,000 positions in Indiana—all accounted for the two-hour limitation, in addition to Jansen's other limitations. (R. 55-57). This court therefore affirms the ALJ's Step Five determination.

## V.    Conclusion

In this case, if the court was allowed to reweigh the evidence or substitute its judgment for that of the Commissioner, the result in this case might be different. However, that is not the standard of review that applies. The ALJ's decision that Jansen was not disabled must therefore be **AFFIRMED**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED** this 15th day of July, 2013.[3]

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Distribution to all ECF-registered counsel of record via email.**

---

[3] The Magistrate Judge notes that the briefs in this case were particularly well done by both counsel.